### SMITH vs. REID.

Facts and circumstances upon which defendant was allowed to come in and defend upon the merits before a referee, on terms, where an inquest was taken by default; the defendant's attorneys alleging they had been misled by the court proceedings published daily in a morning newspaper.

*Motion to set aside inquest, verdict, and subsequent proceedings.*— Defendant's facts : On the 3d July, 1844, served plaintiff's attorneys with affidavit, order, notice of motion, and affidavit of merits, to set aside the inquest in this cause, by reason of being misled by the Morning Herald New-York (defendant's attorneys residing in Kings county), on the 2d day of the circuit, not finding this cause among those published for the

day calendar of that day; one of defendant's attorneys alleging he had been ready at all the previous circuits, and was then ready to try said cause; and plaintiff's attorney knew he had a defence, and an affidavit of merits had been filed. An inquest was taken, and verdict for plaintiff $500, on the said 2d day of the circuit. On the 9th July, 1844, defendant's attorneys served on plaintiff's attorneys notice of tender and stipulation to pay costs of inquest and subsequent proceedings on being taxed, and to try said cause at the then circuit. On the 10th July, 1844, defendant's attorneys were served by plaintiff's attorneys with bill of costs of inquest and notice of taxation for the 15th July, 1844 : on that day, one of defendant's attorneys attended on taxation. Immediately after said costs were taxed, one of plaintiff's attorneys remarked he could not try the cause at that circuit, one of his witnesses being absent out of town. The defendant's attorney informed plaintiff's attorney at that time in what manner he had been misled by the Herald, and insisted plaintiff's attorney was unkind in taking the costs from him under the circumstances. Plaintiff's attorney replied he was out of town when the inquest was taken; and as it was, he was in no hurry for the costs : defendant's attorney might pay them, taking his own time. Soon after said bill of costs was taxed, defendant in this cause became insane, and was confined in a lunatic asylum, where he is still. Defendant's attorneys were unable to get the money for the costs from defendant. Two or three weeks since, defendant's attorneys received a note from plaintiff's attorneys, requesting the costs to be paid, that they might notice the cause for the next circuit. Defendant's attorney (who had the principal charge of the cause, and who is son-in-law to defendant) was at that time obliged to go into the country, on account of sickness in his family. Before leaving, he wrote a line to plaintiff's attorneys, requesting them to notice said cause, and stating to them the fact of the insanity of defendant, and would the next week endeavor to pay the costs out of his own pocket, and pledged himself the costs should be paid if they would notice the cause. On his return, he called on plaintiff's attorneys two or three times to pay said costs, and not finding them in, was obliged again to go to his family in the country on account of continued illness; and on his second return, called on plaintiff's attorneys to pay said costs: not finding them, called again next day and found them, offered to pay the costs, take short notice of trial, and put cause on calendar for next circuit, of which there was full time. Plaintiff's attorneys refused to take the costs, or do any thing in the matter defendant's attorney had requested. Defendant's attorney has just seen on his table (about 4th September, 1844), for the first time, a copy

bill of costs, purporting to be a taxed bill, but no notice on it to that effect, nor is there any demand of payment upon it; nor has defendant's attorney ever received any demand of payment of said costs, but there was an endorsement on said bill of costs as follows: " one of the plaintiff's witnesses is out of town, and therefore the cause could not be brought on the July circuit." Defendant is still confined in the lunatic asylum, and it is uncertain whether he will ever be able to transact business again; no committee has been appointed over him. Defendant's attorneys have just been served with a bill of costs in this suit and notice of taxation for 23d September, 1844. Defendant swears to merits. Plaintiff's facts: Inquest taken in its regular order on the calendar at July circuit, 1844. In February at the December circuit last, plaintiff's attorney had watched this cause with his witnesses for ten days, then the cause was suddenly and unexpectedly called on while plaintiff's witness was gone to dinner, he was expected in court soon, and did come in a few minutes after the cause was disposed of. Defendant would not consent to any arrangement to save costs or delay, and plaintiff's attorneys paid defendant's term costs. Very shortly after the cause had gone down, one of plaintiff's attorneys made a fair arrangement, as he supposed, with one of defendant's attorneys to put the cause again on the calendar at the same circuit, and within three hours thereafter received from the other attorney of defendant, notice of motion for next special term of this court for judgment as in case of non-suit. Plaintiff's attorney was informed soon by defendant's attorney with whom he made the arrangement, that the notice of motion was a mistake, that he would make it all right. He then drew up a stipulation to arrange the same, and plaintiff's attorney signed the same. The day prior to said motion day, plaintiff's attorneys sent to defendant's attorneys for a copy of the stipulation; the defendant's attorney who gave the notice of motion refused to consent to any thing his partner had done, but gave no notice thereof to plaintiff's attorneys, and they narrowly escaped having said motion taken by default. Plaintiff's attorneys, however, accepted defendant's stipulation to pay the costs of inquest, and made out the same and had them taxed. One of defendant's attorneys stated to the taxing officer, he did not want a copy of the taxed bill of costs to be served, or any demand to be made; the taxing officer struck those items out of the bill. Plaintiff's attorney supposed from the conversation then had with defendant's attorney, that he was going to pay the costs soon, and only wanted to go over to Brooklyn to get the money, to which he consented. Plaintiff's attorneys, after requesting of defendant's attorneys

and sending to them a number of times to pay said costs, directed a taxed bill to be served on defendant's attorneys, which was done, July 29, 1844. Plaintiff's attorneys do not know who endorsed on said bill that plaintiff's witness was out of town. On the 19th September one of defendant's attorneys called on plaintiff's attorneys, and said he intended still to pay said costs, but offered no money, and did not say he had it with him, and was informed judgment had been entered. The circuit where venue is laid commences 23d September, 1844. Defendant told one of plaintiff's attorneys personally that he himself had been misled by the report of the day calendar in the paper, and did not cast any blame on defendant's attorneys. Plaintiff's attorneys refused to open the judgment as it was regular, for fear of a long and expensive litigation with an insane defendant, whose ability to pay may be considered doubtful.

WARING & RALPH, *Defts Attys.*          A. L. & H. P. ALLEN, *Plffs Attys.*

*Decision.*—Ordered that motion be granted so far as to permit defendant's attorneys on payment of costs of trial or inquest, and subsequent proceedings, if any, and costs of opposing motion, to be heard before referee on the merits; that the referee make report to this court. Plaintiff's proceedings stayed until the coming in of the report.